[Cite as *Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P.*, 2021-Ohio-808.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Navidea Biopharmaceuticals, Inc., | : | |
| Plaintiff-Appellee/ Cross-Appellant, | : | No. 19AP-825 |
| | : | (C.P.C. No. 18CV-3097) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Capital Royalty Partners II, L.P. et al., | | |
| | : | |
| Defendants-Appellants/ Cross-Appellees. | : | |

D E C I S I O N

Rendered on March 16, 2021

**On brief:** *Barnes & Thornburg LLP, Robert C. Folland*, and *David J. Dirisamer*, for appellee/cross-appellant. **Argued:** *Robert C. Folland.*

**On brief:** *Ulmer & Berne LLP, Andrew W. Owen* and *Rachael L. Rodman*; *Stinson L.L.P., Paul B. Lackey*, and *Michael P. Aigen*, pro hac vice, for appellants/cross-appellees. **Argued:** *Michael P. Aigen.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendants-appellants/cross-appellees Capital Royalty Partners II, L.P., Capital Royalty Partners II (Cayman), L.P., Capital Royalty Partners II – Parallel Fund "A," L.P., Parallel Investment Opportunities Partners II, L.P., Capital Royalty Partners II – Parallel Fund "B" (Cayman), L.P. and Capital Royalty Servicing, LLC ("Capital Royalty") appeal from a judgment of the Franklin County Court of Common Pleas which granted in part and denied in part the summary judgment motion of plaintiff-appellee/cross-appellant, Navidea Biopharmaceuticals, Inc. ("Navidea"), and granted in part and denied

in part Capital Royalty's motion for summary judgment. Navidea filed a cross-appeal from both the trial court's August 16, 2018 (motion to dismiss) and its November 27, 2019 (summary judgment motions) decisions. For the following reasons, affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} Navidea is a biopharmaceutical company located in Dublin, Ohio, and Capital Royalty are lenders. In May 2015, Capital Royalty loaned Navidea an original principal amount of $50 million. As security for the loan, Navidea granted Capital Royalty first-priority liens and security interests in Navidea's property, including bank accounts and accounts receivable. Pursuant to the loan and security agreements, in the event of a default, Capital Royalty was granted certain rights, including the right to declare all outstanding obligations immediately due and payable, to take possession of all collateral without judicial process, and to direct Navidea's account receivables to be paid directly to Capital Royalty.

{¶ 3} In 2016, disputes arose among the parties regarding the amount Navidea owed Capital Royalty, and alleged tortious actions by Capital Royalty against Navidea and the rightful ownership of funds held by Cardinal Health 414 LLC ("Cardinal"), who was Navidea's primary customer. These disputes led to litigation in both Ohio and Texas.

{¶ 4} On April 7, 2016, Capital Royalty filed a lawsuit against Navidea in the Texas Harris County district court alleging Navidea was in default of its obligations under the loan agreement and sought a declaratory judgment that certain default events had occurred.[1] *Capital Royalty Partners II, L.P. v. Navidea Biopharmaceuticals, Inc.*, 151st District Court, Harris Cty. Texas No. 2016-22242 (Dec. 27, 2017) ("*Capital Royalty*, Texas No. 2016-22242"). Capital Royalty requested that Cardinal forward all payments it owed to Navidea to Capital Royalty.

{¶ 5} On June 16, 2016, Capital Royalty exercised its contractual right under the loan documents to require U.S. Bank to transfer funds amounting to $4,112,434.17 from a Navidea account to Capital Royalty. These funds are referred to as the "Swept funds."

---

[1] Macrophage Therapeutics ("Macrophage"), a Delaware corporation, is listed as a defendant in the Texas action, along with Navidea. Macrophage is a guarantor but not listed in Cardinal's interpleader complaint or Navidea's complaint filed in Ohio.

{¶ 6} Navidea filed counterclaims in the Texas action alleging: (1) aiding and abetting breach of fiduciary duty, (2) breach of contract, (3) breach of the duty of good faith and fair dealing, and (4) a declaratory judgment action seeking a declaration that Capital Royalty improperly applied approximately $4 million collected from Navidea to amounts not designated under the loan agreement.

{¶ 7} On February 8, 2017, the Texas court granted partial summary judgment in favor of Capital Royalty holding that Navidea had committed one or more events of default under the loan documents and was liable for damages. Navidea filed a motion for reconsideration. The Texas trial court denied the motion.

{¶ 8} On June 17, 2016, Cardinal filed an interpleader action in Ohio against Navidea and Capital Royalty to determine the true recipient of moneys to be paid by Cardinal under an agreement that Cardinal executed with Navidea and seeking an order directing Cardinal to pay the proper party. *Cardinal Health 414, LLC v. Navidea Biopharmaceuticals, Inc.*, Franklin C.P. No. 16CV-5801 ("the first Ohio action"). On August 26, 2016, Navidea filed an answer and cross-claims against Capital Royalty in the interpleader action, alleging: (1) defamation, arguing that Capital Royalty falsely told Cardinal and others that Navidea had defaulted under the loan documents, (2) intentional interference with contract arguing that Capital Royalty interfered with the contract between Navidea and Cardinal, and (3) Navidea sought a permanent injunction to allow Navidea to use the funds Cardinal owed Navidea, including the funds at issue in the interpleader complaint and preventing Capital Royalty from taking possession of the funds.

{¶ 9} On September 23, 2016 in the first Ohio action, Capital Royalty filed a motion to stay or, in the alternative, a motion to dismiss Navidea's cross-claims for injunctive relief and damages because of the pending Texas action. On November 21, 2016, the Ohio trial court granted leave for Navidea to file an amended cross-claim for injunctive relief and damages, which it filed on December 1, 2016, alleging defamation, interference with contract, abuse of process, and sought a permanent injunction preventing Capital Royalty from taking possession of the funds Cardinal owed Navidea. On January 24, 2017, the Ohio trial court denied Capital Royalty's motion to stay or, in the alternative, motion to dismiss.

{¶ 10} Navidea, Capital Royalty, and Cardinal participated in negotiations with the Ohio trial court judge and reached an agreement, and the parties reduced their settlement

to writing in a document titled Global Settlement Agreement (the "Agreement"),[2] signed March 3, 2017. As part of the Agreement: (1) Navidea, Capital Royalty, and Cardinal agreed to dismiss the claims in the first Ohio action with prejudice (section 1.5(a)), (2) dismiss the counterclaims in the Texas action with prejudice (section 2.1); however, Navidea retained the right to assert any claims and defenses to prove it only owed $47 million, not the $66 million as alleged by Capital Royalty (section 2.1), (3) Capital Royalty would release the liens on Navidea's property and each party would obtain a letter of credit to cover the final judgment (sections 1.4 and 2.1), and (4) Navidea agreed to pay Capital Royalty an amount to be determined by the Texas court but not less than $47 million and not more than $66 million with $59 million to be paid immediately after an asset sale to Cardinal by Navidea before March 10, 2017 (section 1.2). The Texas court was to determine the amount due pursuant to the underlying loan, any fees and other associated costs, and the Texas court would have exclusive jurisdiction over all matters regarding those issues and any issues regarding the letters of credit each party had to obtain.

{¶ 11} The Agreement provided in section 2.1 regarding the parties' litigation in Texas ("Lender" is Capital Royalty and "Company" is Navidea) as follows:

> The Company and Lenders shall continue to litigate, in the Texas Court as part of the Texas Action, the Lenders' claims against the Company arising under the Loan Documents and the Company's defenses and affirmative defenses thereto, (the "Texas Claims"), provided, however, that (a) the Company shall withdraw its counterclaims against the Agent [CRG Servicing LLC] and the Lenders in the Texas Action by filing, on the Closing Date, a Notice of Nonsuit With Prejudice, substantially in the form of Exhibit 2.1(a) hereto, with the Texas Court in the Texas Action and (b) the Company hereby agrees not to assert in the future such (or similar) counterclaims against the Agent and/or the Lenders and/or their affiliates in the Texas Action. For avoidance of doubt, the Texas Claims shall include all defenses and affirmative defenses, whether contractual or extra-contractual, (including, without limitation, rights of setoff and offset) to the causes of action pled by the Lenders in the Texas Action (collectively, "**Defenses**"), provided that the Defenses are permitted by New York law, in a manner consistent with the

---

[2] The parties use both the terms mediation and settlement negotiations (herein referred to as "negotiations"). Regardless of the term, the parties spent nine hours negotiating in front of the Ohio trial court judge which resulted in the Agreement.

mediation transcript, dated February 22, 2017, Case No. 16CV-5801, a copy of which is attached hereto as Exhibit 2.1(b). The Texas Court shall adjudicate the Texas Claims to determine the final amount of the Obligations owed by the Company to the Lenders under the Loan Documents (the "**Final Obligation Amount**"), <u>provided</u>, that the Final Obligation Amount shall in no event be less than $47,000,000 (the "**Obligation Minimum**") or more than $66,000,000 (the "**Obligation Maximum**"), with each such amount net of any amounts received by the Lenders on or prior to receipt of the Deposit Amount, and (1) <u>provided</u> <u>however</u>, that the Company retains, among other rights, the right to assert that all offsets, payments and credits have not been allowed, including without limitation, the credit due for the U.S. Bank funds previously taken by Lenders and (2) <u>provided further</u>, that the Texas Court's decision shall be final and non-appealable and not subject to reconsideration, and shall be binding on all of the Parties to this Agreement. In furtherance thereof, the Lenders and the Company shall notify the Texas Court of this Agreement.

(Emphasis sic.)

{¶ 12} The parties agreed the Texas court would apply New York law. Further, the Agreement provided that the Texas court action was not appealable. "[T]he Texas Court's decision shall be final and non-appealable and not subject to reconsideration, and shall be binding on all of the Parties to this Agreement." (Agreement at section 2.1.)

{¶ 13} The Agreement addressed the Cardinal letter of credit in section 2.3 and provided that Cardinal shall provide a letter of credit in an amount equal to $7,153,000.[3] If

---

[3] In *W. Sur. Co. v. N. Valley Bank*, 5th Dist. No. CT2004-0049, 2005-Ohio-3453, ¶ 15, the court discussed a letter of credit as follows: "A letter of credit is a specialized commercial document arising from an agreement between a bank and its customer. *Carnegie Fin. Corp. v. Akron Nat. Bank & Trust Co.* (1976), 49 Ohio App.2d 321, 327, 361 N.E.2d 504. Letters of credit are unique commercial instruments and are governed by their own unique rules. *Nassar v. Florida Fleet Sales, Inc.*, (S.D.N.Y.1999), 79 F.Supp.2d 284, 291-292, citing *Mutual Export Corp. v. Westpac Banking Corp.*, (C.A.2, 1993), 983 F.2d 420, 423. 'Originally conceived as a means of facilitating international sales of goods, the letter of credit has recently come to serve a variety of purposes, such as ensuring the payment of construction loans, guaranteeing the performance of obligations, and supporting the issuance of commercial paper. * * * The letter of credit facilitates the underlying transaction both by substituting the known and secure credit of the issuer, such as a bank, for the unknown and perhaps risky credit of the other party to the underlying transaction, and by ensuring payment "up front," thereby shifting the burden of litigation to the dissatisfied purchaser of the goods or services.' *In re Guy C. Long, Inc.* 74 B.R. 939, 943, *Insurance Company of North America v. Heritage Bank, N.A.*, (C.A.3, 1979), 595 F.2d 171, 173 (Footnote omitted.)"

the Texas court determined the final obligation was more than $59 million and if Navidea failed to pay the full amount of the required payment to Capital Royalty within five days of the Texas court's determination, then Capital Royalty was entitled to draw on the Cardinal letter of credit in an amount equal to the difference between $59 million and the final obligation amount, plus the actual out-of-pocket costs incurred by Capital Royalty in procuring the letter of credit, but less any partial payment made by Navidea toward the required payment. As will be explained in more detail below, Capital Royalty sent Navidea a letter on January 16, 2018 stating it was going to draw on the entire amount of the Cardinal letter of credit of $7,153,000.

{¶ 14} On March 6, 2017, the parties filed a stipulated notice of voluntary dismissal with prejudice of the first Ohio action.

{¶ 15} In December 2017, the Texas court held a trial and rendered a final judgment for Capital Royalty on December 27, 2017, finding that since Navidea defaulted under the loan agreement as previously determined, Capital Royalty was entitled to $66 million. The Texas trial court order stated: " 'To be clear, though, this judgment requires Defendants "Navidea" to pay an additional Seven Million Dollars ($7,000,000.00) in new money on top of the Fifty Nine Million Dollars that "Navidea" has already paid pursuant to the 2017 settlement agreement entered into prior to the commencement of the trial of this case.' " *In re Navidea Biopharmaceuticals, Inc.*, 14th Dist. Court of Appeals of Texas No. 14-18-00036-CV (Mar. 8, 2018) ("*In re Navidea*, Texas No. 14-18-00036-CV"), quoting *Capital Royalty*, Texas No. 2016-22242.

{¶ 16} Navidea filed a letter and emergency motion to stay execution, arguing the Texas trial court should correct its mathematical errors and reduce the judgment in order to account for Capital Royalty's receipt of the Swept funds. Navidea also filed a motion to correct the judgment in which it argued the trial court should correct the mathematical errors in its judgment to reduce the amount of money owed to Capital Royalty from $7 million to approximately $2 million (reducing the Swept funds from the amount Navidea owed). *Navidea Biopharmaceuticals, Inc. v. Capital Royalty Partners II, L.P.*, 14th Dist.

R.C. 1305.01(A)(10) defines a letter of credit as "a definite undertaking that satisfies the requirements of section 1305.03 of the Revised Code by an issuer to a beneficiary at the request or for the account of an applicant or, in the case of a financial institution, to itself or for its own account, to honor a documentary presentation by payment or delivery of an item of value."

Court of Appeals of Texas No. 14-18-00225-CV (July 16, 2019) ("*Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV").

{¶ 17} On January 3, 2018, the Texas trial court granted a stay and signed the following order:

> After reviewing the pleadings on file and any arguments of counsel, the Court hereby stays the execution of its Judgment which would otherwise be immediately collectible and executable through 5 p.m. Houston time on Wednesday, January 10, 2018. The Court will either enter an amended Judgment and Findings and Conclusions by that time, or not. No additional filings will be considered, and no additional hearings will be held.

*In re Navidea*, Texas No. 14-18-00036-CV, quoting *Capital Royalty*, Texas No. 2016-22242.

{¶ 18} On January 10, 2018, the Texas trial court filed first amended final judgment, which stated in part:

> IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiffs recover from Defendants the amount of $7,000,000 in damages, which is new money, in addition to the $59,000,000 previously paid to Plaintiffs pursuant to the high-low settlement agreement in this case.
>
> IT IS FURTHER ORDERED that the Plaintiffs recover from Defendants post-judgment interest at the rate of 5% per annum from the date of this Amended Final Judgment.
>
> The Court Orders, Adjudges, and Decrees that this Amended Final Judgment replaces the Final Judgment signed on December 27, 2017, and this Amended Final Judgment disposes of all claims, all defenses, and all parties.
>
> It is further ORDERED that no additional filing or motions or corrections will be accepted by the Court pursuant to the plain language of the Parties' agreements.  Further, the Court will not hold any additional hearings in this case.

(Emphasis sic.)  *In re Navidea*, Texas No. 14-18-00036-CV, quoting *Capital Royalty*, Texas No. 2016-22242.

{¶ 19} Thus, the Texas court determined that Navidea had already paid $59 million when the Agreement was reached and ordered Navidea to pay Capital Royalty "an

additional $7,000,000.00 in new money on top of the $59,000,000.00 [Navidea has] already paid in under the settlement agreement in this case." *Capital Royalty*, Texas No. 2016-22242, First Amended Findings of Fact and Conclusions of Law at ¶ 100.

{¶ 20} On January 16, 2018, Navidea then filed an emergency motion to set supersedeas bond and to modify the judgment, arguing the Texas trial court failed to expressly account for the Swept funds. The Texas trial court held a hearing on the bond amount.[4]

{¶ 21} At the hearing, Navidea argued the following:

> Judge, this is a 4.112 million-dollar issue involving the swept funds that were at issue during the trial.
>
> As you know, there was a high-low in the settlement between 59 and 66 million. 59 had already been paid, as well as 4.112 in swept funds.
>
> The damages model that [Capital Royalty] put forward in Exhibit 126 gave credit for the 4.112 in swept funds. Your judgment states that it will be 59 million plus 7 million in damages. Which we believe takes into account the 4.112 in swept funds and that the remaining obligation is 2 million plus.
>
> But there is a 7 million-dollar letter of credit outstanding. [Capital Royalty] have stated their intent to execute on the entire $7 million on the letter of credit despite the prior payment of $4.112 million. That is the reason that we filed the emergency motions. That is what we are trying to stop from happening. And that is what we need clarification on because there is a disagreement between the two sides as to that issue.

(*Capital Royalty*, Texas No. 2016-22242 Mar. 26, 2018 Tr. at 5-6.)

{¶ 22} Capital Royalty argued the following:

> Now they're here trying to argue that you made a mistake, which they're barred from doing. So instead they're taking a

---

[4] In the decision based on an appeal from the Texas trial court setting a bond, the appellate court stated the trial court held a hearing on the bond pursuant to Texas procedure and quoted the trial court from the hearing. *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV. Apparently, the Texas trial court initially refused to hold a hearing because the 14th Dist. Court of Appeals of Texas granted in part Navidea's petition for a writ of mandamus claiming that the district court failed to set a supersedeas bond. The appellate court found the trial court had abused its discretion in failing to set a supersedeas bond and that Navidea did not have an adequate remedy on appeal and conditionally granted the writ to direct the trial court to set the supersedeas bond amount. *See In re Navidea*, Texas No. 14-18-00036-CV.

position that there is now a cap on total recovery, the total amount of money that we can get in this relationship, as opposed to what the cap really is was a cap on trial. What they fail to tell you is that at the time of the settlement agreement, including the 59 million-dollar payment, we had received $71 million.

So if there truly was a 66 million-dollar cap on our total recovery as opposed to what you were doing at trial, there never would have been a trial because the minute we received the 59 million, we would have had to give them 5 million back.

* * *

Everyone knows that this case was a cap on the trial, which was in addition to all the other money we received.

(*Capital Royalty*, Texas No. 2016-22242 Mar. 26, 2018 Tr. at 7-8.)

{¶ 23} The Texas trial court rejected Navidea's argument, stating:

The answer is that it is not in excess of what the Court intended to issue. The Court meant what it said, $7 million new money, period. That's what the judgment says. That's what it means. That's what the evidence was at trial.

(*Capital Royalty*, Texas No. 2016-22242 Mar. 26, 2018 Tr. at 11.)

{¶ 24} After the court's ruling, Navidea asked a question for clarification, as follows:

Where in the findings of fact and conclusions of law was the swept - - were the swept funds dealt with?

THE COURT: They were dealt with in that you had - - I'm persuaded by their argument, among other things, that this was a settlement agreement to pay $59 million in with a high-low of 49 million and 66 million and the evidence sufficiently demonstrated that they're entitled to an additional $7 million and that the swept funds were just as easily contemplated in the 59 million.

(*Capital Royalty*, Texas No. 2016-22242 Mar. 26, 2018 Tr. at 12.)

{¶ 25} The Texas trial court ordered Navidea to file a cash bond of $7,717,500 if Navidea was going to appeal. *Id.*

{¶ 26} Navidea filed an appeal arguing the trial court erred by awarding the Swept funds as damages to Capital Royalty which resulted in a double recovery. Capital Royalty

argued that Navidea's appeal was barred because the parties waived their appeal rights in the Agreement and, thus, Navidea's appeal should be dismissed. Navidea responded that it only waived its right to appeal the trial court's determination of the final obligation amount and not the calculation of damages that included a gross mistake or absurd result.

{¶ 27} While the appeal in Texas was pending, on April 12, 2018, Navidea filed this action in Ohio in Franklin C.P. No. 18CV-3097 ("second Ohio action") and then amended the complaint on May 22, 2018 alleging fraudulent inducement and fraudulent misrepresentation, breach of contract, conversion, unjust enrichment, civil conspiracy, tortious disclosure of confidential information, professional negligence, and breach of confidence. Navidea's contentions were that Capital Royalty had collected more than the $66 million cap on damages as the result of Capital Royalty collecting $4,112,434.17 from U.S. Bank on June 28, 2016, the Swept funds, and Capital Royalty's draw on the Cardinal letter of credit valued at $7,153,000.00 in addition to the $59 million payment Navidea made pursuant to the Agreement. Section 4.3 of the Agreement provided: "Nothing in the foregoing releases shall preclude a Party or Parties from seeking to enforce the terms of this Agreement."

{¶ 28} While the Texas appeal and the second Ohio action were pending, on April 27, 2018, the Texas trial court held a temporary injunction hearing on an anti-suit injunction request filed by Capital Royalty requesting the trial court enforce its judgment and prevent Navidea from proceeding with the Ohio lawsuits. The Texas trial court denied the anti-suit injunction, stating as follows:

> In the Court's opinion, as I understand the claims in Ohio, they seem to me to be quite a reach. To suggest that the fraud - - the alleged fraud having to do with representations about affirmative defenses and whether they can be pursued here, and which ones, is not extrinsic.
>
> It is completely intrinsic in that the written agreement that this Court was trying a case about expressly talked about your ability to assert affirmative defenses.
>
> And as I indicated earlier, I won't go through that in any detail, but as I indicated, the agreement was construed at Navidea's request, both sides' request, really, about whether the affirmative defenses could be asserted. And then ultimately

there was cross motions for summary judgment about which affirmative defenses had any merit.

So we fully litigated the issue of affirmative defenses. And they were tried, the ones that survived summary judgment.

So to say that that is somehow fraud in the inducement when it's expressly in the wording of the operative agreement, or breach of contract, to me seems rather meritless. And it begs the question, given that you-all had waived your appeal, that what did we spend all of 2017 doing here and why did we bother?

Of course, this extrinsic fraud and breach of contract claim are just another bite at the apple. You're accusing them of double-dipping something that we fully litigated, and then had a hearing about and cross motions. And then another hearing about the amount of the supersedeas bond.

But I think that in light of the hearing that recently took place in Ohio and Judge -- is it Serrott, am I saying that right -- Judge Serrott's preliminary finding of jurisdiction and express request on the record that this Court defer to him, essentially, out of a sense of comity and collegiality, I will allow him to proceed further with this case.

And I'm confident that he'll be able to see exactly what I see. Perhaps the procedural vehicle will be different. But I -- and I'm very close to granting an anti-suit injunction here, but at this point I don't think it's appropriate.

(*Capital Royalty*, Texas No. 2016-22242 Apr. 27, 2018 Tr. at 26-27.)

{¶ 29} In the second Ohio action, Capital Royalty filed a motion to dismiss which the trial court granted in part on August 16, 2018. The Ohio trial court determined it had jurisdiction over the parties and Franklin County was the proper venue to determine all issues related to the Agreement because the trial court retained jurisdiction to enforce the Agreement during the negotiations.

{¶ 30} The Ohio trial court determined it had retained jurisdiction to enforce the Agreement based on the judge's statements during the negotiations that occurred in 2017, resulting in the Agreement, as follows:

THE COURT: In Ohio, anything on the record is enforceable as a contract. I can enforce it. We've reached an agreement. I

can enforce this. Again, everything else is going to Texas. If you have problems with documents, which I hope that you won't, because I have been involved enough. We all agree? Okay.

(First Ohio action Feb. 22, 2017 Tr. at 18-19.)

{¶ 31} The parties incorporated the transcript of the negotiations into the Agreement in section 7.6, which provides:

> Entire Agreement. This Agreement and the exhibits attached hereto constitutes the entire agreement among the Parties with respect to the matters covered hereby and supersedes all previous written, oral or implied understandings among the Parties with respect to such matters. The Recitals set forth in the beginning of this Agreement are incorporated herein.

(The transcript of the negotiations was attached as Exhibit 2.1(b).)

{¶ 32} The Ohio trial judge further stated on the record during the negotiation proceedings as follows:

> The dispute in this case will be resolved in Texas regarding the underlying loan and what's owed, what fees are due, what attorney fees and other associated costs will be litigated in Texas. Texas will have exclusive jurisdiction over all matters regarding these issues.
>
> The position of Navidea is that they owe 47 million dollars. The position of [Capital Royalty] is that they're owed * * *.
>
> * * * 66 million dollars. There's a difference of 47 versus 66 million. The 59 million dollars will be paid directly to [Capital Royalty]. It will be litigated in Texas before the judge that it's currently set in front of with no appeal. That's a final decision. Whatever the decision is, the judge will take testimony, however they decide to hear that, in Texas. The Texas court will decide that issue.
>
> The parameters are, do we owe 47 million, or do we owe 66 million? There's a difference, obviously, of 12 million dollars on the one side that potentially Navidea could recoup. It's my understanding that [Capital Royalty] will obtain a letter of credit for that 12 million dollars. The cost of that letter of credit, we'll go through in a moment.
>
> On the other side, there's a risk of a difference of seven million dollars. Navidea will obtain a letter of credit at its cost, or

Cardinal will. One way or another, there will be a letter of credit.

The costs of those letters of credit will be allocated in Texas, depending on the following: The prevailing party, or winning party, whatever you want to call the party, will be defined as anybody -- if [Capital Royalty] obtains a judgment of 59 million dollars and one penny, they are deemed to be the prevailing party with regard to the costs of the letter of credit. If it's $58,999,999.99, then Navidea is deemed the prevailing party, and [Capital Royalty] will pay the costs of that letter of credit.

So the litigation in Texas -- the cross-claims here are dismissed. So the amount in controversy is from 47 to 66 with payment guaranteed as I've outlined.

* * *

Any dispute involving the letters of credit will be determined by the Texas court.

(Feb. 22, 2017 Tr. at 5-7.)

{¶ 33} The parties and the trial judge continued:

[Navidea's counsel]: * * * [T]he 59 million dollars will be paid with 47 million dollars from the Cardinal sale, five million dollars from the Merrill Lynch account, which is currently in a Merrill Lynch account.

* * *

THE COURT: Let me correct that. All right. So 59 million dollars is being paid at closing to [Capital Royalty], and then [Capital Royalty] is going to release all their liens. You're free to have your five million dollar account. They're going to retain the money that was swept. Let's make that clear. Go ahead.

[Navidea's counsel]: Well, they're going to retain the money that's swept, but we reserve the right to argue that that should be credited back to us along with all the other arguments that we have down there.

THE COURT: You can make an affirmative defense out of what would be your cross-claims down in Texas.

[Navidea's counsel]: Yes. In addition, Your Honor, just to make it clear, we don't release any claims or defenses in Texas, but whatever claims and defenses we have will be subject to the parameters, which is 47 million to 66 million.

THE COURT: Well, it's my understanding, again, that there's going to be a release in the sense of, this is it, those are the parameters. You aren't going to be pursuing damages other than an offset, for lack of a better term, within these parameters to figure out who the winner is below 59 million or above 59.

[Navidea's counsel]: So we have all our claims and defenses intact. We can't go below 47 or above 66.

[Capital Royalty's counsel]: Our position is that the nature of this dispute deals with dismissal of prejudice of everything here in Ohio and otherwise releases your counterclaims in Texas subject to your rights to otherwise assert affirmative defenses in connection with the dispute, which is how much is really owed.

THE COURT: Correct. That's my understanding, and that's what we have been dealing with. In other words, you can go down there and say, "Listen, here's why we only owe them 47 million dollars, you know. We only owe them 47 million dollars because they preemptively filed an action and seized accounts. We really weren't in material default." But you can't obtain a judgment against them as somehow collectable. [sic.] We're within these parameters.

(Feb. 22, 2017 Tr. at 9-12.)

{¶ 34} Thus, the Ohio trial court denied the motion to dismiss regarding the three claims related to the Agreement, breach of contract, conversion, and unjust enrichment claims. The trial court found:

This Court retained jurisdiction to enforce the settlement agreement but agreed all other issues regarding the amount owed and litigation of all defenses and other factual matters concerning the loan were to be decided by the Texas Court before Judge Englehart. Plaintiff complains that Defendants allegedly misrepresented the settlement agreement to the Texas Court preventing it from presenting all its defenses. Whether or not this claim has merit is irrelevant. Those issues were before the Texas Court and that Court was the exclusive

forum to determine what evidence and defenses were relevant.

(Second Ohio action Aug. 16, 2018 Order and Entry at 1-2.) The trial court dismissed Navidea's claims regarding fraudulent inducement and fraudulent misrepresentation, civil conspiracy, tortious disclosure of confidential information, professional negligence, and breach of confidence on grounds that: (1) the court lacked jurisdiction over these claims, (2) improper venue, (3) litigation immunity, and (4) failure to plead the fraud claims with particularity and specificity.

{¶ 35} On August 27, 2018, Capital Royalty filed a petition seeking a writ of prohibition against the Ohio trial court judge in the Supreme Court of Ohio. *State ex rel. Capital Royalty Partners II, L.P. v. Serrott, 01/23/2019 Case Announcements*, 2019-Ohio-169. Navidea filed a motion to intervene which was granted. Judge Serrott filed a motion to dismiss arguing the trial court had subject-matter jurisdiction and that Capital Royalty had an adequate remedy in the ordinary course of law through an appeal. The Supreme Court granted the motion to dismiss and dismissed Capital Royalty's petition for a writ of prohibition.

{¶ 36} While the Texas appeal and the petition seeking a writ of prohibition were pending, on January 31, 2019, Navidea filed a motion for enforcement of the Agreement to require Capital Royalty to provide for the extension or replacement of the letter of credit arguing that the Ohio trial court had the power to interpret and enforce the parties' Agreement and should require that the letter of credit be extended or replaced pending the final adjudication of the amount Navidea owes to Capital Royalty.

{¶ 37} On February 15, 2019, the Ohio trial court held a hearing in the second Ohio action on Navidea and Capital Royalty's motions to compel discovery, and Navidea's motion for enforcement of the Agreement for the extension or replacement of the letter of credit. The trial court stated the following during the hearing:

> JUDGE SERROTT: All right. So [Navidea's counsel], what am I supposed to do if I rule in your favor, which I doubt if I do before this Texas litigation's done, if the Texas Court of Appeals decides this exact issue because the exact issue that you're arguing to me is in front of the Texas Court of Appeals?
>
> [Navidea's counsel]: I don't think that's accurate, Your Honor.

JUDGE SERROTT: Well, I read your briefs, and you outlined why you think they were overpaid, and it's the same argument you're making up here.

[Navidea's counsel]: Well, it's different in this sense, Your Honor. The issue in Texas is whether or not the judge erred and permitting an overpayment or, in fact, did he even order an overpayment, which, you know, is an entirely different question. What does it mean when he says, you know, seven million of new money? But the fact of the matter is even if he did make a ruling such as that, it would still be a violation of the settlement agreement to collect more than was permitted under the settlement agreement. So, in fact, it is possible that there could be a ruling in Texas saying this is what the court ruled, you waived your appeal rights, we're sorry, it may have been a mistake, but, you know, too bad. And in the same respect, we could be entitled to a payment here either under theory of breach of settlement agreement, under the theory of- -

JUDGE SERROTT: How wouldn't that be inconsistent with the ruling down there? That's what concerns me. You know, listen, I haven't looked at everything in detail and it'll all be flushed out, assuming this case goes forward.

* * *

So I think he should have accounted for those funds. Again, I haven't decided the matter completely and I know there's all kinds of issues about the interest and et cetera, et cetera, but all that argument was made down there, and, you know, that issue's on appeal. It's the exact same issue on appeal. And if you can't convince the judge in Texas and you can't convince the Court of Appeals but you convince me, you're going to have inconsistent judgments.

[Navidea's counsel]: Well, I would submit to Your Honor that that, in fact, is not the case, and I would also say that, you know, at the status we are now with respect to taking of discovery, we don't necessarily even have to get to that issue. Likewise, there's been a motion to dismiss that's been filed which you've already ruled on.

Speaking to the fact that to the extent they didn't account for the four million dollars, it would be a breach of the settlement agreement, and given that, we're entitled to take discovery 'cause, ultimately, we can't prove our case until we've taken

the discovery and found out information, so that's really what we're here today on.

JUDGE SERROTT: I understand.

[Navidea's counsel]: We're not here today on jurisdictional issues.

JUDGE SERROTT: Well, I'm thinking about it, okay?

[Navidea's counsel]: Yeah.

JUDGE SERROTT: I understand. I've read through everything and I'm going to rule on the motions today, but I am concerned about, you know, inconsistent judgments, I'm concerned about the full faith in credit, and, you know, that's what I'm concerned about because the exact issue is on appeal. I do understand the argument that they could say, listen, you waived your right to appeal.

* * *

JUDGE SERROTT: All right. Well, we can deal with the motions today, but I want you to know I am concerned about that issue. And, you know, I ruled on the motion to dismiss 'cause I didn't think it was proper to dismiss it at that point and the supreme court, all they said in their ruling was, listen, they didn't patently lack jurisdiction. There's no other commentary about all the legal issues that they still have that they can appeal depending on how I rule regarding full faith in credit, is this the right venue and all those other issues. So all the supreme court did is say, listen, you didn't patently lack jurisdiction because jurisdiction was reserved.

(Feb. 15, 2019 Tr. at 7-11.)

{¶ 38} On the same day as the hearing, February 15, 2019, the Ohio trial court granted in part and denied in part each party's motion to compel regarding discovery but denied attorney fees. The trial court denied Navidea's motion for enforcement of the Agreement, finding the Texas court retained jurisdiction over the letters of credit and, thus, the Ohio court had no ability to issue an order extending the letters of credit. "Any dispute involving the letters of credit will be determined by the Texas court." (Feb. 22, 2017 Tr. at 7.)

{¶ 39} On July 16, 2019, the Texas Fourteenth Court of Appeals rendered a decision in Navidea's appeal. Navidea argued on appeal that the Texas trial court improperly calculated damages owed to Capital Royalty because it did not account for the Swept funds in the final judgment which resulted in a double recovery for Capital Royalty. The Texas appellate court held that the waiver of appeal was not limited to the trial court's determination of the final obligation amount but applied to the entirety of the adjudication of the Texas claims. As to the Texas claims, the appellate court found that Navidea agreed to:

> [N]onsuit its counterclaims but retained the right to assert "all defenses and affirmative defenses" to those claims, including "the credit due for the U.S. Bank funds previously taken by Lenders[,]" [Capital Royalty] i.e., the swept funds that are the subject of this appeal. The Texas Court is then directed to "*adjudicate the Texas claims*" to "*determine*" the Final Obligation Amount "*net* of any amounts received by the Lenders on or prior to receipt of the [$59 million Navidea paid under the settlement agreement]" to reach its "decision."

(Emphasis sic.) *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV, quoting the Agreement.

{¶ 40} The Texas appellate court concluded that "the only fair reading of the reference to the 'Texas Court's decision' is that it refers to the trial court's adjudication of the Texas Claims, which encompasses the determination of the Final Obligation Amount 'net of' (i.e., minus) any amounts [Capital Royalty] received before Navidea's payment of the $59 million, subject to Navidea's right to assert a credit due for the Swept funds and other defenses." *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV. The appellate court found the trial court's amended final judgment was the decision that is final and non-appealable. Thus, the appellate court concluded Navidea waived its right to appeal the trial court's judgment in the parties' Agreement. The court also found that Navidea failed to demonstrate the trial court committed a gross mistake because the record reflected that the court's judgment fully effectuated the parties' Agreement. The court dismissed the appeal. *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV.

{¶ 41} In the second Ohio action, both parties sought summary judgment on the breach of contract, conversion, and unjust enrichment claims. In a decision dated November 27, 2019, the trial court in the second Ohio action granted in part and denied in

part Navidea's summary judgment motion and granted in part and denied in part, Capital Royalty's motion for summary judgment. In the decision, the trial court stated, "Further, regarding jurisdiction, Judge Serrott stated '[i]n Ohio, anything on the record is enforceable as a contract. I can enforce it. We've reached an agreement. I can enforce this [Agreement] * * * everything else is going to Texas.' " (Nov. 27, 2019 Decision at 2-3, quoting Feb. 22, 2017 Tr. at 18.) The trial court found Capital Royalty had the right to take the Cardinal draw but that its retention of those funds put Capital Royalty's recovery in excess of the $66 million cap because it already had recovered the Swept funds and found that Navidea was entitled to summary judgment on its breach of contract claim. However, Navidea's conversion and unjust enrichment claims were alternate theories of recovery to its breach of contract claim and, therefore, the Ohio trial court denied these claims.[5] Thus, the trial court granted Navidea's motion for summary judgment regarding its breach of contract claim regarding the Swept funds and the Cardinal letter of credit draw and interest but denied Navidea's motion for summary judgment regarding its conversion, unjust enrichment sanctions, punitive damages, and attorney fees. The trial court denied Capital Royalty's motion for summary judgment pertaining to the court's jurisdiction to enforce the Agreement, its breach of contract claim regarding the Swept funds and Cardinal letter of credit draw but granted Capital Royalty's motion for summary judgment regarding Navidea's conversion, unjust enrichment claims, sanctions, punitive damages, and attorney fees.

{¶ 42} Capital Royalty filed a notice of appeal and Navidea filed a cross-appeal. These appeals are presently before us.

## II. Assignments of Error

### A. Capital Royalty's Appeal

{¶ 43} Capital Royalty assigned the following four assignments of error for our review:

> [I.] The Ohio trial court committed reversible error under the
> Full Faith and Credit Clause of the United States Constitution
> and well-settled Ohio common law by rendering a judgment
> that constitutes an impermissible collateral attack on the valid
> judgment of another state court.

---

[5] The trial court stated that these claims were "dismissed" on pages 18-19 of its decision but denied the motion for summary judgment regarding these claims. (*See* Nov. 27, 2019 Decision.)

[II.] The Ohio trial court committed reversible error by rendering a judgment that violates the enforceable forum selection clause that the business entities involved in this dispute incorporated into their fully integrated contractual agreement to resolve the disputes among them.

[III.] Even if the Ohio trial court properly considered the merits of Navidea's breach of contract claim (which it did not), the undisputed material facts do not support the Ohio trial court's holding on that claim.

[IV.] Even if the Ohio trial court properly held that Navidea was entitled to judgment on its breach of contract claim (which it was not), the Ohio trial court improperly applied the wrong state's statutory interest rate to the amount of the judgment.

## B. Navidea's Cross-Appeal

{¶ 44} Navidea asserted in its cross-appeal the following five assignments of error:

[I.] The Trial Court erred in granting the Motion to Dismiss as to * * * Navidea Biopharmaceuticals, Inc.'s ("Navidea") tort claims on the basis that it lacked jurisdiction over those claims and/or that it was an improper venue for those claims.

[II.] The Trial Court erred in granting the Motion to Dismiss as to Navidea's tort claims on the basis of litigation immunity.

[III.] The Trial Court erred in granting the Motion to Dismiss as to Navidea's tort claims on the basis of a failure to plead the fraud claims with particularity and specificity.

[IV.] The Trial Court erred in granting Defendants-Appellants' Motion for Summary Judgment as to Navidea's conversion claim and in not awarding Navidea punitive damages.

[V.] The Trial Court erred in finding that Navidea was not entitled to recover its attorney fees on its breach of contract claim.

## III. Analysis

{¶ 45} The trial court granted partial summary judgment for each of the parties. We review de novo a trial court decision granting summary judgment. *Capella III, LLC v.*

*Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 10th Dist. No. 10AP-214, 2010-Ohio-6529, ¶ 9. Summary judgment is appropriate where "the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, ¶ 6. The court must resolve all doubts and construe the evidence in favor of the non-moving party when ruling on a motion for summary judgment. *Pilz v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 04AP-240, 2004-Ohio-4040, ¶ 8.

{¶ 46} Navidea filed this action (second Ohio action) claiming, among other things, breach of contract on grounds that Capital Royalty breached the Agreement by collecting $70,265,434.17, which is in excess of the $66 million limit permitted by the Agreement. Navidea asserts the overpayment is the result of Capital Royalty collecting $4,112,434.17 from U.S. Bank on June 28, 2016, the Swept funds, and Capital Royalty's draw on the Cardinal letter of credit valued at $7,153,000.00 in addition to the $59 million payment Navidea made pursuant to the Agreement. Navidea argues this overpayment is a breach of contract and if not deemed a breach of contract, then Navidea alternatively sought relief based on conversion and unjust enrichment. Thus, Navidea sought an award of $4,265,434.17 in actual damages, $8,530,868.34 in punitive damages, interest, and attorney fees.

{¶ 47} Capital Royalty argued in response that the trial court did not have jurisdiction to address the issues because the final decision in Texas was non-appealable and this court must also give the Texas judgment Full Faith and Credit. Alternatively, Capital Royalty argued they did not breach the Agreement by collecting more than the $66 million cap because Navidea's calculation of the funds was incorrect. Finally, Capital Royalty argued Navidea did not satisfy the elements for conversion or unjust enrichment.

{¶ 48} On appeal, Capital Royalty argues we must reverse the trial court's judgment for three reasons: (1) the trial court judgment violates the Full Faith and Credit Clause of

the United States Constitution and constitutes an impermissible attack on the Texas judgment, (2) the Agreement provided that the Texas court had exclusive jurisdiction to determine the issues raised in Navidea's Ohio claims, and (3) the trial court erred in determining that Capital Royalty breached the Agreement. Capital Royalty's first and second assignments of error address the first two reasons set forth above. Capital Royalty's third and fourth assignments of error address the third reason set forth above.

## A.  Capital Royalty's First and Second Assignments of Error

{¶ 49} In its first and second assignments of error, Capital Royalty contends the trial court erred by finding it breached the Agreement and rendering a judgment that violates the Full Faith and Credit Clause of the United States Constitution and well-settled Ohio common law because the trial court judgment constitutes an impermissible collateral attack on the valid judgment of the Texas court and violated the forum selection clause that the parties chose in the Agreement.

{¶ 50} Navidea's claim for breach of contract was as follows:

> The [Capital Royalty] Parties have failed to abide by their obligations under [the Agreement] by not permitting Navidea to raise all affirmative defenses in the Texas Litigation to which it was entitled under [the Agreement], and by claiming to have been owed more than $66,000,000.00 as of the Parties' settlement agreement in order to increase the [Capital Royalty] Parties' ultimate recovery from Navidea.

(Amended Compl. at ¶ 203.)

{¶ 51} It is important to keep the specific claim in mind as we consider Capital Royalty's first and second assignments of error. We address the second assignment of error regarding the forum selection clause first.

{¶ 52} Capital Royalty asserts the Agreement provided that the Texas court had exclusive jurisdiction to: (1) determine the amounts owed between the parties—including consideration of set-off rights, (2) the parties rights under the Agreement, and (3) any other disputes in connection with the Agreement. In support, Capital Royalty points to sections 2.1, 7.3, 7.6, and 1.5 of the Agreement. It also submits that New York law applies to interpretation of the Agreement and the forum selection clauses.

{¶ 53} Navidea argues the Agreement provided exclusive jurisdiction to the Texas court only on the issue of the maximum obligation or the amount owed, but not on the issue

of entitlement to an offset for the Swept funds, not on the issue of enforcement of the Agreement, and not on claims that happened after the Texas court issued its judgment. Navidea also points to sections 2.1 and 7.3, as well as sections 2.3, 4.1, 4.2, and 4.3 of the Agreement. Navidea submits that New York law applies when interpreting the scope of the Agreement and in determining whether the Agreement provides for exclusive jurisdiction in the Texas court; however, Ohio law applies when interpreting enforceability of the Agreement. Finally, Navidea argues, in the alternative, that even if it is determined the Agreement provides for exclusive jurisdiction in the Texas court on the issues alleged in the breach of contract claim, that such jurisdiction should not be enforced due to fraud on the part of Capital Royalty.

{¶ 54} The Ohio trial court determined that it retained jurisdiction to enforce the Agreement. Specifically, it determined that the Texas court retained "all rights to determine how much Navidea owed to [Capital Royalty] under the Loan Agreement and Ohio retained all rights to enforce the Global Settlement Agreement, but to do so Ohio must apply New York law to such enforcement." (Nov. 27, 2019 Decision at 8.) The court made its determination based on statements the common pleas judge made during the negotiations and on section 7.3 of the Agreement.

{¶ 55} Section 4.3 of the Agreement states "[n]othing in the foregoing releases shall preclude a Party or Parties from seeking to enforce the terms of this Agreement." Navidea argues that because section 4.3 does not explicitly allocate jurisdiction to enforce the terms of the Agreement, it is necessary to look at the Ohio trial judge's statement during negotiations, and that the judge's statement establishes the Ohio court had jurisdiction to enforce the Agreement and therefore to consider and rule in its favor on the breach of contract claim. The Ohio trial judge stated the following during negotiations:

> In Ohio, anything on the record is enforceable as a contract. I can enforce it. We've reached an agreement. I can enforce this. Again, everything else is going to Texas. If you have problems with documents, which I hope that you won't, because I have been involved enough. We all agree? Okay.

(Feb. 22, 2017 Tr. at 18-19.)

{¶ 56} Capital Royalty argues that section 7.6, the integration clause of the Agreement, superseded the trial court's oral comments during negotiations. However, as

Navidea points out, section 7.6 provides that the Agreement, and the exhibits attached thereto, constitute the entire agreement of the parties. The negotiation proceedings, containing the Ohio trial judge's oral statements quoted above, was attached to the Agreement as Exhibit 2.1(b). Notwithstanding, Capital Royalty argues that the context of the trial judge's statement was in response to a comment by Navidea's attorney who stated the parties previously had trouble documenting things between them and questioned whether the parties would be able to document the Agreement.

{¶ 57} It is not necessary for us to determine whether the Ohio trial judge's statement during negotiations granted the Ohio court exclusive jurisdiction to enforce the Agreement. This is so because, even assuming, arguendo, that the Ohio court had such jurisdiction, the Agreement specifically provided that the obligations Capital Royalty allegedly failed to abide by be addressed exclusively by the Texas court. Furthermore, in addition to the Agreement specifically providing for the Texas court's exclusive jurisdiction relating to: (1) the raising of affirmative defenses, and (2) the claim for the amount owed, the Texas court did, in fact, exercise its jurisdiction over these matters and rendered final judgment regarding the same. For the reasons we further discuss below, we find the Ohio trial court erred in exercising jurisdiction over the matters raised in the breach of contact claim as it was specifically alleged by Navidea.

{¶ 58} Section 7.3 of the Agreement provides, as follows:

> Governing Law; Waiver of Jury Trial. [Governing law clause:] Except for any disputes solely between Cardinal Health and the [Navidea] (which are governed by a certain Side Letter Agreement between Cardinal Health and the Company), *this Agreement and all matters arising hereunder or with respect hereto* shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of laws thereof. [Forum selection law clause:] From and after the Effective Date, each Party agrees that *all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by this Agreement* (*and any and all Exhibits*[6] *hereto*) shall be commenced **exclusively** in the Texas Court (and appealed only to a court with jurisdiction over the Texas Court's decisions) and each Party submits to the **exclusive** jurisdiction of the Texas Court (or any appeals

---

[6] We note that Exhibit 2.3 is the Cardinal Letter of Credit Form.

court with jurisdiction over the Texas Court's decisions) *for the adjudication of any dispute thereunder or in connection therewith* and hereby waives any claim that it is not personally subject to the jurisdiction of any such court. [Jury trial waiver clause:] Each Party hereby waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any proceeding *arising out of or relating to this Agreement or the transactions contemplated hereby*.

(Emphasis added.)

{¶ 59} Section 7.3 of the Agreement uses the word "exclusive" twice to indicate that the Texas court[7] is the exclusive forum and other forums are excluded. The forum selection clause also expressly addresses the scope of the clause and includes "all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by this Agreement [and] the adjudication of any dispute thereunder or *in connection therewith*." (Emphasis added.)

{¶ 60} Section 7.3 contains language indicating the parties' intent to make the Texas court's jurisdiction exclusive. The phrase "exclusive jurisdiction" is, without a doubt, a phrase of exclusivity. The language the parties used does not merely authorize jurisdiction in the 151st Judicial District Court of Harris County, Texas, rather, it mandates jurisdiction in the Texas court and clearly provides that jurisdiction is appropriate in Texas to the exclusion of all other jurisdictions. Furthermore, the scope of the clause covers the matters raised in the breach of contract claim as it was specifically alleged by Navidea.

{¶ 61} Section 2.1, when read in its entirety, also supports the finding that the Agreement provided for exclusive jurisdiction in the Texas court over matters raised in the breach of contract claim as it was specifically alleged by Navidea. Section 2.1 states:

> The Texas Claims. The Company and the Lenders shall continue to litigate, in the Texas Court as part of the Texas Action, the Lenders' claims against the Company arising under the Loan Documents and the Company's defenses and affirmative defenses thereto, (the "Texas Claims"), provided, however, that (a) the Company shall withdraw its counterclaims against the Agent and the Lenders in the Texas Action by filing, on the Closing Date, a Notice of Nonsuite With Prejudice, substantially in the form of Exhibit

---

[7] The clause uses "the Texas Court," which is designated in the Recitals section of the Agreement as "the 151st Judicial District Court of Harris County, Texas" and refers to a specific venue for the claims. (*See* Agreement at 1.)

2.1(a) hereto, with the Texas Court in the Texas Action and (b) the Company hereby agrees not to assert in the future such (or similar) counterclaims against the Agent and/or the Lenders and/or their affiliates in the Texas Action. For avoidance of doubt, the Texas Claims shall include all defenses and affirmative defenses, whether contractual or extra-contractual, (including, without limitation, rights of setoff and offset) to the causes of action pled by the Lenders in the Texas Action (collectively, "**Defenses**"), provided that the Defenses are permitted by New York law, in a manner consistent with the mediation transcript, dated February 22, 2017, Case No. 16CV-5801, a copy of which is attached hereto as Exhibit 2.1(b). The Texas Court shall adjudicate the Texas Claims to determine the final amount of the Obligations owed by the Company to the Lenders under the Loan Documents (the "**Final Obligation Amount**"), provided, that the Final Obligation Amount shall in no event be less than $47,000,000 (the "**Obligation Minimum**") or more than $66,000,000 (the "**Obligation Maximum**"), with each such amount net of any amounts received by the Lenders on or prior to receipt of the Deposit Amount, and (1) provided however, that the Company retains, among other rights, the right to assert that all offsets, payments and credits have not been allowed, including without limitation, the credit due for the U.S. Bank funds previously taken by Lenders and (2) provided further, that the Texas Court's decision shall be final and non-appealable and not subject to reconsideration and shall be binding on all of the Parties to this Agreement. In furtherance thereof, the Lenders and the Company shall notify the Texas Court of this Agreement.

(Emphasis sic.)

{¶ 62} Section 2.1 states the parties "*shall* continue to litigate, in the Texas Court [Capital Royalty's] claims against [Navidea] arising under the Loan Documents and [Navidea's] *defenses and affirmative defenses thereto.*" (Emphasis added.) It also states "[f]or avoidance of doubt, the Texas Claims *shall* include *all defenses and affirmative defenses*, whether contractual or extra-contractual, (*including, without limitation, rights of setoff and offset*) to the causes of action pled by [Capital Royalty] in the Texas Action." (Emphasis added.) Nevertheless, Navidea argues that section 2.1 does not provide for exclusive jurisdiction in the Texas court and points to the clause at the end of section 2.1 which provides that "[Navidea] retains, among other rights, the right to assert that all offsets, payments and credits have not been allowed, including without limitation, the

credit due for the U.S. Bank funds previously taken by [Capital Royalty]." Navidea argues that "[t]here is no language as to jurisdiction over that right, and that right is apart from the right to assert offsets as part of the 'Texas Claims,' demonstrating a separate right. * * * There is no explicit language reserving such a decision to the exclusive jurisdiction of the Texas Court." (Mar. 13, 2020 Navidea Brief at 30-31.)

{¶ 63} We are not persuaded by Navidea's argument. The clause at the end of section 2.1 is prefaced by the language stating the parties "shall" continue to litigate in the Texas court and that the Texas claims "shall" include Navidea's defenses and affirmative defenses. We must read the statements in context with one another. We also consider section 2.1 in context with section 7.3 which we discussed above, as well as section 1.5 which requires all parties to file a notice of voluntary dismissal of the Ohio action with prejudice.

{¶ 64} Navidea also looks to section 2.3[8] and argues that section does not state the Texas court is solely empowered to determine the issues about which it now complains. However, section 2.3 does reference the Texas court and, again, section 2.3 must be read in context with the other relevant sections.

---

[8] Section 2.3 of the Agreement states: "The Cardinal Health Letter of Credit. On the Closing Date, Cardinal Health shall deliver to the Agent, on behalf of the Lenders, a Letter of Credit (the "**Cardinal Health Letter of Credit**") issued by a financial institution substantially in the form attached hereto as Exhibit 2.3, in an amount equal to $7,153,000. If the Texas Court determines that the Final Obligation Amount is more than the Deposit Amount, then, if the Company fails to pay the full amount of the required payment to Lenders within five (5) days of the Texas Court's determination, the Agent shall be entitled to draw on the Cardinal Health Letter of Credit in an amount equal to the difference between the Deposit Amount and the Final Obligation Amount plus the actual out-of-pocket costs incurred by each Lender in procuring the Lender Letters of Credit, but less any partial payment made by the Company toward the required payment. Upon delivery of such payment to the Agent, the Cardinal Health Letter of Credit shall terminate. If the Texas Court has not finally adjudicated the Final Obligation Amount by the one-year anniversary of the Closing Date, Cardinal Health shall extend the Cardinal Health Letter of Credit or procure a new letter of credit in substantially the same form, until the Texas Court rules on the Final Adjudication. Any costs incurred in extending the Cardinal Health Letter of Credit, or in procuring a letter of credit in substantially the same form, shall be borne by Cardinal Health."

{¶ 65} In a last-ditch effort, Navidea points to sections 4.1[9] and 4.2,[10] the mutual release sections, and the exception therein for the "Texas Claims." Navidea again then attempts to define the "Texas Claims" narrowly to exclude the matters raised by the breach of contract claim as it was specifically alleged. Again, we are not persuaded by Navidea's attempt to narrow the scope of sections 7.3 and 2.1.

{¶ 66} Sections 7.3 and 2.1 of the Agreement were agreed to by the parties. Thus, Navidea's opportunity to argue regarding the issue of the Swept funds was before the Texas court during the trial to determine the amount Navidea owed between $59 and $66 million. Further, when Navidea agreed to the Agreement terms that the Texas trial court would determine the amount Navidea owed Capital Royalty between $59 and $66 million, Navidea was aware that Capital Royalty had already acquired the Swept funds and planned to keep them. Navidea specifically negotiated it would retain the right to argue to the Texas court that it was entitled to a setoff from the Swept funds. The Texas trial court stated that issue had been litigated and determined Navidea still owed another $7 million. Thus, the Agreement and the Texas court addressed the same matters raised in the breach of contract claim as it was specifically alleged by Navidea.

{¶ 67} Finally, Navidea argues we should not enforce the forum selection clause because there is evidence of fraud or overreaching in securing agreement to that clause. In

---

[9] Section 4.1 of the Agreement states: "Effective as of the Closing Date, Navidea, Macrophange and Cardinal Health, on behalf of themselves and any entity or person that could claim derivatively, each hereby irrevocably and forever release and discharge, and covenant not to sue, the Agent, each of the Lenders, all of their respective directors, officers, members, agents or representatives, and any of them, from or for any and all claims, liability, damages, counterclaims, claims for equitable relief, actions, causes of action, and/or demands (including, without limitation, attorneys' fees or costs) of every nature and description whatsoever, whether matured, unmatured or contingent, liquidated or unliquidated, whether known, unknown or hereafter discovered, arising in whole or in part prior to the Closing Date in connection with, arising out of or released to the Loan Documents or any action taken or failed to be taken in connection therewith, except for the Texas Claims solely as set forth in this Agreement."

[10] Section 4.2 of the Agreement states: "Effective as of the Closing Date, the Agent and each Lender, on behalf of themselves and any entity or person that could claim derivatively, hereby irrevocably and forever release and discharge, and covenant not to sue, the Company and Cardinal Health, all of their respective directors, officers, members, agents or representatives, and any of them, from or for any and all claims, liability, damages, counterclaims, claims for equitable relief, actions, causes of action, and/or demands (including, without limitation, attorneys' fees or costs) of every nature and description whatsoever, whether matured, unmatured, contingent, liquidated or unliquidated, whether known, unknown or hereafter discovered, arising in whole or in part prior to the Closing Date in connection with, arising out of or related to the Loan Documents or any action taken or failed to be taken in connection therewith, except that the Agent and each Lender shall be entitled to pursue against the Company only the Texas Claims solely as set forth in this Agreement."

support, it points to its fraudulent inducement claims. Navidea argues that "[Capital Royalty] engaged in fraud which induced Navidea to agree to the forum selection clause." (Mar. 31, 2020 Navidea Brief at 42.) However, Navidea's fraudulent inducement claims do not allege fraudulent inducement to agree to the forum selection clause. There is no mention in the fraud claims of sections 7.3 and 2.1. Rather, those claims allege that Capital Royalty failed to disclose that it intended to argue before the Texas court that Navidea owed more than $66 million and that it intended to seek to block Navidea from asserting affirmative defenses before the Texas court. Furthermore, as will be discussed later, the Ohio trial court dismissed the fraud claims on grounds of: (1) lack of jurisdiction, (2) improper venue, (3) litigation immunity, and (4) failure to plead the fraud claims with particularity and specificity. Upon dismissing the claims, the Ohio trial court further stated that it did "not believe any of the 'fraud' variety claims are viable nor are they appropriate in this forum." (Aug. 16, 2018 Decision at 4.) Navidea argues in its assignments of error that the trial court erred in doing so. We are not persuaded by Navidea's arguments that we should refuse to enforce the forum selection clause, and we will address the merits of Navidea's fraudulent inducement claims when we address its assignments of error.

{¶ 68} Accordingly, we sustain Capital Royalty's second assignment of error.

{¶ 69} Turning now to the first assignment of error, Capital Royalty asserts the Ohio trial court violated the Full Faith and Credit Clause of the United States Constitution.

{¶ 70} The Full Faith and Credit Clause, Article IV, Section 1, United States Constitution, provides that " 'Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State.' " *See Wyatt v. Wyatt*, 65 Ohio St.3d 268, 269 (1992) (pursuant to Full Faith and Credit Clause, Ohio courts must recognize the validity of judgments rendered in sister states). The doctrine of Full Faith and Credit requires that the state of Ohio give to "acts, records, and judicial proceedings" of another state the same faith and credit "as they have by law or usage in the courts of such State * * * from which they are taken." *See* 28 U.S.C. 1738. Thus, Ohio courts must give the same "credit" to the Texas proceeding at issue in this case as that proceeding would carry in the Texas courts. *See Durfee v. Duke,* 375 U.S. 106, 109 (1963).

{¶ 71} Navidea claims that Full Faith and Credit does not extend to Capital Royalty's draw on the full amount of the Cardinal Letter of Credit because that draw took place on

April 9, 2018 after the Texas Court rendered its judgment on January 10, 2018. Therefore, according to Navidea, the claim did not exist and could not have existed when the Texas court rendered its judgment and claim preclusion does not apply. Navidea also argues issue preclusion does not apply because, according to Navidea, the Texas court never determined whether Navidea should be credited for the Swept funds.

{¶ 72} Initially, the Ohio trial court denied Navidea's motion for enforcement of the Agreement finding that "[a]ny dispute involving the letters of credit will be determined by the Texas court." (Feb. 22, 2017 Tr. at 7.) However, subsequently, the Ohio trial court found that it had jurisdiction to "determine whether the $66,000,000.00 final judgment from the Texas court includes the disputed funds such as the Swept Funds and Cardinal Draw, and if so, whether Navidea overpaid in excess of the $66,000,000.00, which would be a material breach of the Global Settlement Agreement." (Nov. 27, 2019 Decision at 9.)

{¶ 73} Ultimately, the Ohio court determined that: (1) the Texas court was "incorrect" when it "believed, or speculated, that the Swept Funds (over $4,000,000.00) were accounted for in the $59,000,000.00 payment," and (2) that Capital Royalty retaining the Cardinal Draw funds put Capital Royalty's recovery in excess of the $66 million cap. (Nov. 27, 2019 Decision at 13, 15.)

{¶ 74} We reject Navidea's arguments that the Texas court never determined whether Navidea should be credited for the Swept funds and that the issues related to the Cardinal Draw did not exist when the Texas court rendered judgment. Notwithstanding, its ultimate conclusion that Capital Royalty breached the contract, as noted above, the Ohio trial court acknowledged the same. The Texas court judgments and post-judgment rulings confirm the same.

{¶ 75} The Texas court determined that Capital Royalty provided all offsets, payments, and credits. Navidea filed a motion to correct the judgment immediately after the Texas judgment and argued the trial court should correct the mathematical error in its judgment to reduce the amount of money owed to Capital Royalty from $7 million to approximately $2 million (reducing the Swept funds from the amount Navidea owed). *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV. When the Texas court did not find in Navidea's favor, Navidea then filed an "Emergency Motion to Set Supersedeas Bond and to Modify the Judgment," arguing the Texas trial court failed to expressly account for

the Swept funds.  The trial court held a hearing on the bond amount and Navidea specifically argued that the Texas court had not accounted for the Swept funds, as follows:

> Judge, this is a 4.112 million-dollar issue involving the swept funds that were at issue during the trial.  * * *
>
> As you know, there was a high-low in the settlement between 59 and 66 million. 59 had already been paid, as well as 4.112 in swept funds.
>
> The damages model that the Plaintiffs put forward in Exhibit 126 gave credit for the 4.112 in swept funds. Your judgment states that it will be 59 million plus 7 million in damages. Which we believe takes into account the 4.112 in swept funds and that the remaining obligation is 2 million plus.
>
> But there is a 7 million-dollar letter of credit outstanding. The [Capital Royalty] have stated their intent to execute on the entire $7 million on the letter of credit despite the prior payment of $4.112 million. That is the reason that we filed the emergency motions. That is what we are trying to stop from happening. And that is what we need clarification on because there is a disagreement between the two sides as to that issue.

(Mar. 26, 2018 Emergency Bond Hearing Tr. at 5-6.)  The Texas court addressed this argument and stated, "the evidence sufficiently demonstrated that [Capital Royalty is] entitled to an additional $7 million and that the swept funds were just as easily contemplated in the 59 million."  (Mar. 26, 2018 Emergency Bond Hearing Tr. at 12.) *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV.

{¶ 76} Navidea also filed an appeal arguing the Texas trial court erred by awarding the Swept funds as damages to Capital Royalty which resulted in a double recovery. Navidea further contended it could file an appeal because it only waived its right to appeal the trial court's determination of the final obligation amount and not the calculation of damages that included a gross mistake or absurd result.  The appellate court held the waiver of appeal was not limited to the trial court's determination of the final obligation amount but applied to the entirety of the adjudication of the Texas claims.  As to the Texas claims, the appellate court found Navidea agreed to:

> [N]onsuit its counterclaims but retained the right to assert "all defenses and affirmative defenses" to those claims, including "the credit due for the U.S. Bank Funds previously taken by

the Lenders[,]" [Capital Royalty] i.e., the swept funds that are the subject of this appeal. The Texas Court is then directed to "*adjudicate the Texas claims*" to "*determine*" the Final Obligation Amount "*net* of any amounts received by the Lenders on or prior to receipt of the [$59 million Navidea paid under the settlement agreement]" to reach its "decision."

(Emphasis sic.) *Navidea Biopharmaceuticals*, Texas No. 14-18-00225-CV, quoting the Agreement. The Texas appellate court concluded the trial court's amended final judgment was the decision that is final and non-appealable, Navidea waived its right to appeal the trial court's judgment in the parties' Agreement, and Navidea failed to demonstrate that the trial court committed a gross mistake because the record reflected the court's judgment fully effectuated the parties' Agreement. The court dismissed the appeal. *Id.*

{¶ 77} The Ohio trial court and this court must recognize and give credit to the Texas courts and the judgments. We are required to give the Texas judgment "at least the *res judicata* effect which the judgment would be accorded in [Texas]." *Durfee* at 109.

{¶ 78} Accordingly, Capital Royalty's first assignment of error is sustained.

## B. Capital Royalty's Third and Fourth Assignments of Error and Navidea's Fourth Assignment of Error, in part, and Fifth Assignment of Error

{¶ 79} Our ruling sustaining Capital Royalty's first and second assignments of error renders moot Capital Royalty's third and fourth assignments of error, as well as Navidea's fourth assignment of error, in part, as it relates to awarding punitive damages on Navidea's breach of contract claim, and Navidea's fifth assignment of error.

{¶ 80} Accordingly, we render moot Capital Royalty's third and fourth assignments of error, as well as Navidea's fourth assignment of error, in part, and fifth assignment of error in its entirety.

## C. Navidea's Fourth Assignment of Error, in part

{¶ 81} In Navidea's fourth assignment of error, it contends, in part, that the trial court erred in granting Capital Royalty's motion for summary judgment as to Navidea's conversion claim. The trial court found it retained jurisdiction over Navidea's conversion claim but denied the claim because it granted Navidea's breach of contract claim. Given that we found the forum selection clause was enforceable as to the matters raised in Navidea's breach of contract claim, we will review the court's denial of Navidea's conversion claim.

{¶ 82} Capital Royalty argues that New York law applies to Navidea's tort claims. Navidea generally argues that Ohio law applies to tort claims, but also addresses New York law regarding conversion. Regardless of which state law is applied, Navidea's conversion claim fails.

{¶ 83} Under Ohio law, Navidea cannot prevail on its conversion claim. In *RAE Assocs., Inc. v. Nexus Communications, Inc.*, 10th Dist. No. 14AP-482, 2015-Ohio-2166, ¶ 30, this court defined the tort of conversion as "the wrongful exercise of dominion over property to the exclusion of the rights of the owner or withholding property from the owner's possession under a claim inconsistent with the owner's rights." *RAE*, citing *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93 (1990). The elements of conversion include: (1) the plaintiff had ownership or right of possession of the property at the time of conversion, (2) the defendant's conversion by a wrongful act or disposition of plaintiff's property or property rights, and (3) damages resulted therefrom. *Id.*, citing *Dice v. White Family Cos., Inc.*, 173 Ohio App.3d 472, 2007-Ohio-5755, ¶ 17 (2d Dist.).

{¶ 84} In Ohio, courts have historically viewed actions for breach of contract and conversion as alternate causes of action. *See Boston v. Sealmaster Industries*, 6th Dist. No. E-03-040, 2004-Ohio-4278, ¶ 36, citing *Richardson v. Shaw*, 209 U.S. 365, 382-83 (1908). An action for damages may be held in either one or the other. *Id.*, citing *Erie R.R. Co. v. Steinberg*, 94 Ohio St. 189 (1916), paragraph one of the syllabus.

{¶ 85} Under New York law, a conversion consists of someone, intentionally and without authority, exercising control over the personal property of another. *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). New York law states "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987). It is also settled under New York law that a tort claim will not arise "where the plaintiff is essentially seeking enforcement of the bargain." *Somer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552 (1992); *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir.1993). For a conversion claim to succeed in the context of a dispute regarding a contract, "a plaintiff must allege acts that constitute unlawful or wrongful behavior separate from a violation of contractual rights." *Elma RT v. Landesmann Internatl. Marketing Corp.*, S.D.N.Y. No. 98 Civ.

3662(LMM) (Mar. 22, 2000), citing *Fraser v. Doubleday & Co.*, 587 F.Supp. 1284, 1288 (S.D.N.Y.1984).

{¶ 86} Navidea does not assert damages outside of what it alleged in its breach of contract claim and is seeking to enforce the bargain. In paragraph 208 of the Amended Complaint regarding the breach of contract claim, Navidea alleged: "[s]pecifically, the [Capital Royalty] Parties have recovered at least $**7,153,000.00** from Cardinal's line of credit, which, when coupled with the money the [Capital Royalty] Parties have already recovered from Navidea, totals $**70,265,434.17** or more." (Emphasis sic.) In paragraph 221 of the Amended Complaint regarding the conversion claim, Navidea alleged:

> The actions of the [Capital Royalty] Parties, in taking the full $**7,153,000.00** of the Cardinal line of credit, for a total recovery of $**70,265,434.17** or more, despite this being clearly prohibited by the agreement between the Parties, and despite being repeatedly told that they were not entitled to it, evidences hatred, ill will or a spirit of revenge, or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

(Emphasis sic.) Navidea is specifically seeking the return of damages that exceed the contractual $66,000,000 limit.

{¶ 87} It is true, as Navidea argues, that New York law states that a party may be liable in tort when "it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations." *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995). But, our resolution of Capital Royalty's first and second assignments of error and deference to the Texas court's judgment reveal Capital Royalty did not fail to fulfill its contractual obligations. Navidea has not persuaded us that any of Capital Royalty's obligations, allegedly resulting in conversion, are separate and apart from its contractual obligations. Nor has it persuaded us that it had a possessory interest in the portion of the letter of credit not needed to satisfy Navidea's $66 million obligation. Navidea bases its possessory interest on what it deems to be "the [Texas court's] erroneous assumption that the Swept Funds were included within the $59,000,000 settlement payment." (Feb. 21, 2020 Navidea's Brief at Y23.) The Texas court ruled Capital Royalty was entitled to $66 million with $7 million of that in new money. When Navidea did not pay within the specified five days, Capital Royalty submitted the draw on the Cardinal letter of credit. Such

action was not a "wrongful exercise of dominion over property." *RAE Assocs., Inc.* at ¶ 30. We have already determined the Texas court had exclusive jurisdiction to determine matters relating to the Swept funds and the letter of credit. Thus, Navidea cannot prove the elements of conversion.

{¶ 88} Accordingly, Navidea's fourth assignment of error is overruled in part.

## D. Navidea's First Assignment of Error

{¶ 89} In Navidea's first assignment of error, it argues the trial court erred in granting Capital Royalty's motion to dismiss regarding its tort claims on the basis it lacked jurisdiction and/or was the improper venue for those claims.

{¶ 90} To begin, we address the scope of our analysis of the tort claims. Navidea filed two separate fraudulent inducement and misrepresentation claims, one as to Capital Royalty's maximum recovery and one as to Navidea's affirmative defenses. However, Navidea asserts, in footnote 2 of its February 21, 2020 brief, that it is not appealing the trial court's ruling as to Navidea's claim for fraudulent inducement and misrepresentation as to the affirmative defenses which Navidea could argue before the Texas court. Furthermore, Navidea asserted it was not seeking damages other than amounts awarded beyond the $66 million limit.

{¶ 91} During oral argument, counsel stated he believed that most of the tort claims had not been appealed, and that the footnote in their brief indicated such. He specifically mentioned that the release of confidential information and professional negligence claims had not been appealed. However, he stated he was not withdrawing any claims other than as specified in their "paperwork." He believes the better claims are fraud and conversion and all the remaining claims arose out of the context of the Agreement.

{¶ 92} Further, in their cross-appellant merit brief and reply brief, Navidea only sets forth arguments regarding its fraud and conversion claims. Therefore, it is unclear whether Navidea is appealing the trial court's dismissal of its civil conspiracy, tortious disclosure of confidential information, professional negligence and breach of confidence claims. Nevertheless, App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Additionally, App.R. 16(A)(7)

requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."   "In an appeal to this court, '[t]he burden of affirmatively demonstrating error on appeal rests with the party asserting error.' " *Morgan v. Ohio State Univ. College of Dentistry*, 10th Dist. No. 13AP-287, 2014-Ohio-1846, ¶ 64, quoting *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16.

{¶ 93}  Thus, we will not address Navidea's claims as to the trial court's dismissal of its civil conspiracy, tortious disclosure of confidential information, professional negligence and breach of confidence claims.  Since we have already addressed Navidea's conversion claim, we shall only address its fraudulent inducement and misrepresentation as to Capital Royalty's maximum recovery.

{¶ 94} The trial court granted Capital Royalty's motion to dismiss regarding Navidea's civil conspiracy, professional negligence, tortious disclosure of financial information, fraudulent inducement and misrepresentation, and breach of confidence claims finding, simply, without analysis, that:

> [The aforementioned claims] are all barred by all of the following:
>
> 1.  This Court lacks jurisdiction over the claims having retained jurisdiction only over the settlement agreement;
>
> 2.  Improper venue;
>
> 3.  Litigation immunity;
>
> 4.  Failure to plead the fraud claims with particularity and specificity.

(Aug. 16, 2018 Decision at 3-4.)   The Ohio court further stated that it "does not believe any of the 'fraud' variety claims are viable nor are they appropriate in this forum."  (Aug. 16, 2018 Decision at 4.)

{¶ 95}  We begin our analysis with Navidea's first assignment of error and the issues of jurisdiction and venue.  Again, we look to section 7.3 and the forum selection clause of the Agreement.  In particular, we focus on the phrase "in connection therewith":

> From and after the Effective Date, each Party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by this Agreement (and any and all Exhibits hereto) shall be commenced exclusively in the Texas Court (and appealed only to a court with jurisdiction over the Texas Court's decisions) and each Party submits to the exclusive jurisdiction of the Texas Court (or any appeals court with jurisdiction over the Texas Court's decisions) for the adjudication of any dispute thereunder or *in connection therewith* and hereby waives any claim that it is not personally subject to the jurisdiction of any such court.

(Emphasis added.)

{¶ 96} Navidea's fraud and misrepresentation claims, as well as the civil conspiracy claim, are "in connection with" the Agreement and the transactions contemplated by the Agreement disputed and adjudicated by the Texas court. The claims make reference to the Agreement and allege fraud, misrepresentation and conspiring to do the same during the course of negotiating the Agreement. Therefore, the Texas court had exclusive jurisdiction over the fraud, misrepresentation and civil conspiracy claims.

{¶ 97} Navidea argues the forum selection clause is not broad enough to cover its tort claims. It further argues that even if the terms of the forum selection clause apply, it should not be enforced because, according to Navidea, the clause was secured by fraud and it would be unfair or unreasonable to enforce. These are the same arguments we addressed and rejected in our analysis of Capital Royalty's second assignment of error.

{¶ 98} Navidea concedes the interpretation of the forum selection clause is governed by New York law. Navidea argues that "[u]nder New York law, the dispositive issue in determining the scope of a forum selection clause is the language of the clause. *Bernstein v. Wysoki*, 77 A.D.3d 241, 250, 907 N.Y.S.2d 49 (2010). Forum selection clauses can apply to torts if the clause applies to 'any dispute that may arise out of this agreement or otherwise between the parties...' or, less broadly, to 'any dispute arising under or in connection with...' a contract if the tort is sufficiently related. *Id.*" (Feb. 21, 2020 Navidea's Brief at X95.) We agree, and find that Navidea's fraud, misrepresentation and conspiracy claims are in connection with and sufficiently related to the Agreement and the transactions contemplated by the Agreement disputed and adjudicated by the Texas court.

{¶ 99} For the precedent set forth by Navidea summarized above, Navidea relied on *Bernstein v. Wysoki*, 77 A.D.3d 241 (2010). *Bernstein* involved enforcement of a forum selection clause by non-signatory parties, which is not the case here. Nevertheless, *Bernstein* points us to *Tourtellot v. Harza Architects, Engineers & Constr. Mgrs.*, 55 A.D.3d 1096 (2008), which is more relevant.

{¶ 100} In *Tourtellot*, the New York appellate court stated "[f]irst, under its broad and unequivocal terms, the applicability of the subject forum selection clause does not turn on the type or nature of the dispute between them; rather, it applies to 'any dispute arising under or *in connection with*' their agreement." (Emphasis added.) *Id.*, citing *see, e.g., Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (1993), *cert denied*, 510 U.S. 945; *WMW Mach., Inc. v. Werkzeugmaschinenhandel GmbH IM Aufbau*, 960 F.Supp. 734, 747 (1997); *Triple Z Postal Servs., Inc. v United Parcel Serv., Inc.*, 13 Misc.3d 1241(A) (2006). *Tourtellot* involved a purchasing agreement between a supplier (Seller) and a wholesale purchaser (Purchaser) which contained a warranty clause, indemnification clause as well as a forum selection clause. The forum selection clause stated: "JURISDICTION: Venue over any dispute arising under or *in connection with* this Purchase Order shall reside exclusively in the state and federal courts located in the Counties of Boone and Cook, in the state of Illinois, and Purchaser and Seller consent to the personal jurisdiction of such courts." (Emphasis underline omitted.) (Emphasis italics added.) *Tourtellot* at 1097. After being struck in the head by one Seller's falling light fixtures, a retail customer of the Purchaser filed suit against the Purchaser alleging negligence, strict products liability, and breach of warranty. The Seller refused to defend and indemnify the Purchaser, and therefore the Purchaser commenced a third-party action against the Seller seeking contribution and/or common-law as well as contractual indemnification based on allegations of negligence and breach of contract. The Seller asserted an affirmative defense based on the forum selection clause and won dismissal of the third-party complaint based on this defense. The Purchaser argued that the forum selection clause was never intended to apply to third-party claims in personal injury and products liability actions such as the plaintiff's action. The New York Court of Appeals disagreed. The court held that "[s]ince the essence of [the Purchaser's] third-party complaint is to seek enforcement of its contractual right to indemnification under the agreement * * *, the complaint does indeed concern a dispute arising under or in

connection with that agreement such that the forum selection clause is applicable and, once invoked by [the Seller], should be enforced." *Id.* at 1098.

{¶ 101} Such is the case here, the essence of Navidea's fraud, misrepresentation and conspiracy claims are to seek enforcement of its contractual right to the obligation maximum outlined in section 2.1 of the Agreement. The tort claims do indeed concern a dispute arising under or in connection with the Agreement or the transactions contemplated by the Agreement disputed and adjudicated by the Texas court. The forum selection clause applies to these claims. Furthermore, for the same reasons we outlined previously in our analysis of Capital Royalty's second assignment of error, the clause applies and should be enforced.

{¶ 102} Accordingly, we overrule Navidea's first assignment of error.

### E.  Navidea's Second and Third Assignments of Error

{¶ 103} In its second assignment of error, Navidea argues the trial court erred in granting Capital Royalty's motion to dismiss regarding its tort claims on the basis of litigation immunity. In its third assignment of error, Navidea argues the trial court erred in granting Capital Royalty's motion to dismiss as to Navidea's tort claims on the basis of failure to plead the fraud claims with particularity and specificity.

{¶ 104} Our resolution of Navidea's first assignment of error makes it unnecessary for us to consider Navidea's second and third assignments of error.

{¶ 105} Accordingly, Navidea's second and third assignments of error are rendered moot.

### IV. Conclusion

{¶ 106} For the foregoing reasons, we sustain Capital Royalty's first and second assignments of error, which renders moot Capital Royalty's third and fourth assignments of error as well as Navidea's fourth, in part, and fifth assignments of error on cross-appeal. We overrule Navidea's first and fourth, in part, assignments of error on cross-appeal, which renders moot Navidea's second and third assignments of error on cross-appeal. The August 16, 2018 judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. The November 27, 2019 decision and judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part. This cause is

remanded to that court with instructions to proceed in accordance with law and this decision.

*Judgments affirmed in part; reversed in part;*
*and cause remanded with instructions.*

BROWN and SADLER, JJ., concur.

———————————